ROBERTSON *et al.*

*v.*

BRECKINBRIDGE *et al.*

*(Supreme Court of Appeals of Virginia, Sept. 22, 1898.)*

[31 S. E. Rep. 892.]

Wills—Construction—Case at Bar.

Where testator gave his property to his wife for life, with direction that, in her discretion, she should make suitable advancements to their children as they became of age, or married, and provision that on her death the property then in her possession should be equally divided among said children, account be taken of advancements, and that, if any one of said children died before his mother, leaving issue, such issue should take his share, advancements to such a child dying before the mother intercept to that extent any right of his issue.

Same—Payment of Taxes by Executor—Entitled to Credit for—Case at Bar.

The executor of one who gives his property to his wife for life, with power to make advancements to their children, the property in her possession at her death to be equally divided among them, is entitled to credit for payment of taxes on the life estate, and debts contracted by her, they having been paid by him with the acquiescence of the children.

Same—Same—Same—Same.

Where testator gave his property to his wife for life, with power to make advancements to their children, the property in her possession at her death to be equally divided among them, payments by the executor, one of the children, of taxes on the life estate, and debts contracted by the life tenants in the management of the estate, not having been objected to by any of the others for years, will be presumed to have been the result of a family agreement.

Appeal from circuit court, Botetourt county.

Suit by Nannie B. Robertson and another against Cary Breck-
inbridge and others.    From a decree, complainants appeal.
Reversed.

*William A. Glasgow, Jr.*, for appellants.

*W. B. Simmons* and *Benjamin Haden*, for appellees.

KEITH, P. J., delivered the opinion of the court.

This case is before us upon an appeal from the circuit court
of Botetourt county rendered in a chancery suit brought by
Nannie B. Robertson and J. Gilmer Breckinbridge, the only heirs
at law of Gilmer Breckinbridge, deceased, a son of Cary Breckin-
bridge, Sr.    The object of the suit is to construe the will of Cary
Breckinbridge, to have a settlement of the accounts of his per-
sonal representatives, and a division of his estate.

Cary Breckinbridge died in 1867, having first made his will,
by which he disposed of a large estate, real and personal.    By
the first clause of his will he directs his debts to be paid, and
to that end he charges certain mill property, a tract of land
known as "Keon's Place," and "Thompson's Ridge," as the
primary fund for their payment, instead of his personal estate.

By the second clause of the will he gives the residue of his
estate, real and personal, to his wife, Emma W. Breckinbridge,
during her life, and then says :    "It is my wish that she shall,
at her discretion, make suitable advancements to my children,
as they arrive at the age of twenty-one, or marry, charging
such one with such advancements as he or she may receive at
valuation to be made at the time in such manner as my execu-
tors may direct.    After the death of my wife, I wish all my
estate, real and personal, that may be in her possession at the
time of her death, equally divided among my children, each
one accounting for any advancements received, either from
me or from my wife.    If any of my children should die
during the lifetime of my wife without leaving a child or

lineal descendant, I wish the portion of my estate to which such decedent would have been entitled divided, as before mentioned, among my surviving children and the children or lineal descendants of such as may have died leaving any; the representatives (as above mentioned) of any of my children who may die taking such part of my estate as my said children would have been entitled to if living."

He appoints his wife, Emma W. Breckinbridge, executrix, and his sons, Peachy G., James, and Cary Breckinbridge, as they respectively attain lawful age, his executors. The widow and Cary Breckinbridge qualified, and the latter assumed the actual burden of executing the will.

A motion was made in the county court of Botetourt county to have commissioners appointed to divide the lands of Cary Breckinbridge among his devisees, and at the June term, 1868, the commissioners appointed for that purpose made their report. This proceeding, however, was never perfected, and was subsequently dismissed, but those interested appear to have entered into the possession and enjoyment of the shares allotted to them, and by a deed dated the 31st of December, 1883, the devisees of Cary Breckinbridge undertook to carry into effect that report. This deed was signed by all the parties in interest except Mrs. Mary A. Woodville, a daughter of Cary Breckinbridge, who had removed to West Virginia, who, while she did not sign the deed, appears to have entered into the possession of the share allotted to her by the report of the commissioners. Cary Breckinbridge settled no account until July, 1882. When this suit was brought, and he was called upon to settle his accounts, he says, in his answer, that he is willing to have a commissioner to examine and correct his accounts as executor so far as they need reformation, and admits that in it there are some errors and omissions; and the court entered a decree directing a commissioner to settle "an account of the personal representatives of Cary Breckinbridge, Sr., deceased, and said representatives are hereby directed to render said accounts

before said commissioner, and especially to lay before him the evidences of debt and vouchers for the disbursements mentioned in the ex parte settlement heretofore made by them, and referred to in the bill." When this account came in, exceptions were taken to it, and it is from the decree of the circuit court passing upon these exceptions that this appeal was taken.

In so far as the executor paid taxes due by the testator at his death, and the debts which he then owed, there is, of course, no exception taken to his accounts. The commissioner, however, has given the executor credit for taxes paid by him upon the estate of Cary Breckinbridge which accrued after the testator's death, and for debts which it is alleged were contracted, not by the testator, but some of them by his widow in the management of the estate as life tenant, by his son C. W. Breckinbridge, and by Cary Breckinbridge, the executor. The account of the executor is make up of a great number of items. The evidence upon which the account is based, oral and written, is, chiefly, that furnished by the executor himself, and the account appears to be in conformity with that evidence. From the testimony of the executor it appears that the taxes paid by him upon the life estate in the hands of the widow were paid with the approbation of all parties in interest. Certain it is that there is no evidence of protest or objection from any quarter whatsoever; and, while not strictly within the line of his duty as executor, it would be a harsh ruling which would now hold the executor personally responsible for payments made in good faith 30 years ago, and unobjected to at the time; and which, as far as the record shows, were not only acquiesced in, but approved, by all who had any interest in the subject.

The powers of the widow under the will were extensive. It is sought to place her now in the position of a mere life tenant of an estate held solely for her own benefit, and occupying, as it were, an attitude of antagonism to those in remainder. Such was not the fact. She was, while the life tenant in name,

really a trustee under the will, holding this property for the benefit of her children. She was their mother, and took this property with the trust confided to her by her husband that she would make advancements out of it as their necessities might require, and as her discretion might approve. And so we find at an early date proceedings instituted looking to a division of the estate among those entitled ; and, while that proceeding in the county court was never perfected, it was made the basis upon which the lands were divided among the children in accordance with their respective interest. The will gives to her, subject to the payment of debts, his whole estate, real and personal, during his life, but it is charged with the trust that she should make "suitable advancements to the children as they became twenty-one years of age, or married," and at the death of his wife—the period fixed by the will at which the estate was to be finally settled—he directs that "all his estate, real and personal, that may be in her possession at the time of his death, be equally divided."

It was contended in argument that, inasmuch as Mrs. Woodville died during the lifetime of her mother, her children took a vested remainder under the will, and that they cannot be affected by any act of the life tenant ; but this view leaves wholly out of consideration the power and duty of the widow to make advancements, in her discretion, of the whole estate, and of the fact that the share of Mrs. Woodville was in a large measure advanced to her during her lifetime, which, of course, intercepted any right upon the part of her children.

Parties cannot be permitted to stand by and see an executor deviate from the path prescribed to him by the will and by the law in the manner and under the peculiar circumstances disclosed by this record, and then, years afterwards, when it is impossible to restore him to the position which he would otherwise have occupied, undertake to impose upon him a liability for his acts done with their acquiescence. It will be presumed, in

a case like this, that what was done was done as a result of family arrangement and agreement.

We are of opinion, therefore, that there was no error in allowing the executor credit for taxes accruing upon the estate in the hands of the widow, and upon debts contracted by her in the management of the estate prior to its practical distribution among those entitled.

Another subject of controversy in the circuit court was as to the Figgat debt, which was secured by a deed of trust. That deed of trust is a valid lien to secure that debt, binding the interests of those who united in it, but the account of the commissioner should show of what that debt really consisted,— that is to say, what part of it was for debts contracted by the testator, and what part by the widow,—and to the extent that it represents a debt contracted by the testator or by his widow the executor should be credited in his accounts with its payment. The account should also show what part of it represents the personal debts of Cary Breckinbridge, the executor, or George W. Breckinbridge ; and to the extent that it is found that the private debt of Cary or George W. Breckinbridge entered into and has been paid or is to be paid out of the share of Miss Breckinbridge, one of the grantors, she, as between herself and her brothers, should be treated as a surety, and be reimbursed by them, but, in so far as the Figgat debt is composed of debts due by the testator or widow, it is to be considered as a debt of the estate, and the executor credited accordingly, if he has paid it or any part of it.

It appears probable from the exceptions and from the account of the executor that his private debts and those of his brother have to some extent been allowed him as credit. If such there be, they, of course, should be stricken out. A bond, note, or account may, on its face, appear to be the personal debt of the executor or of George W. Breckinbridge, or of some other person, and may yet, in truth and in fact, be the debt of the

estate.   If such be the case, the executor, upon its payment, should have credit for it ; but if, upon the evidence, it appears to be in truth and in fact not the debt of the testator, and not a debt contracted by the widow under circumstances as above stated, then the executor should not be so credited.   The presumption, of course, is that all accounts made, and all notes given, which, on their face, charge Cary Breckinbridge, Jr., or George W. Breckinbridge, or any person other than the testator, as being the debtor, are, in the absence of evidence to the contrary, to be considered as the debts of those who, upon the face of the note or account, appear as the debtors ; and in such case the burden of proof would be upon the executor to establish his right to the credit.   But these are matters of detail, and our purpose now is merely to declare the principles upon which we think the account should ultimately be settled, and which, we believe, will not be found difficult of application.

There is a claim on the part of the wife of Cary Breckinbridge, Jr., which is to be considered.   After the death of the testator, certain moneys belonging to the wife of the executor were used in payment of the debts of the estate.   The decree complained of allows this claim for money thus advanced to the estate, and directs that it be paid out of the amount found due by the testator to the executor.   So long as the claim asserted by Mrs. Virginia C. Breckinbridge, wife of Col. Cary Breckinbridge, is less than the sum which he is entitled to recover from the estate, it does not appear to be a matter of concern to the other devisees and legatees of Cary Breckinbridge, Sr.   If they are to pay it, it is of no moment to them whether it is to be paid to Col. Breckinbridge or to his wife.   For the present, therefore, the determination of her rights is reserved.

If, upon the settlement of the accounts of the executor when this case is again before the commissioner, the amount due the executor shall be found insufficient to satisfy the claim of Mrs.

Virginia C. Breckinbridge, the commissioner will then inquire and report upon her right to recover in the light of the evidence in the record, and of such as may be adduced before him in the contingency mentioned.

For these reasons the decree of the circuit court is reversed, and the cause remanded to be further proceeded with in accordance with the principles herein announced.